

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD35286 |
| | ) | |
| JAMES AARON LOWE, | ) | FILED: January 22, 2019 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Douglas P. Bacon, Judge

**<u>AFFIRMED</u>**

James Lowe appeals his $42.43 gas-pump drive-off stealing conviction. We begin with the state's request to invoke the escape rule, which gives us discretion to dismiss appeals of defendants who abscond after conviction. *See* ***State v. Carter***, 523 S.W.3d 590, 597 (Mo.App. 2017); ***State v. Thomas***, 466 S.W.3d 44, 47 (Mo.App. 2015).

After the August 14 guilty verdict,[1] the court continued Lowe on his prior bond over the state's objection, but admonished him to "obviously not to leave the jurisdiction and obviously make any future court appearances...."

Lowe did not appear for a September 15 hearing. The court issued a capias warrant that was still outstanding when Lowe failed to appear for sentencing on

---

[1] Dates are 2017. A jury trial for a $42 theft may be explained by an observation at sentencing that Lowe "has nine prior stealing convictions. This makes ten. This is his tenth stealing in a period of 27 years."

October 13.  In November, Lowe was apprehended in Texas.  The state incurred $611 to return him to Missouri, where he was finally sentenced on December 8.

Despite Lowe's contrary arguments, "it would be appropriate to exercise our discretion to dismiss [his] appeal pursuant to the escape rule." ***Carter***, 523 S.W.3d at 598.  With light editing, ***Thomas***'s observations also could fit here:

> After her conviction, Thomas, whose bond was continued, failed to appear for her sentencing ... and a capias warrant was issued.  More than two months later, Thomas was found and the warrant was served.  On May 6, 2014, Thomas was sentenced.  Thomas displayed no intention of voluntarily returning on her own for sentencing.
>
> By escaping justice for over three months, Thomas demonstrated disregard of the law and disrespect for the court and the criminal justice system.  Those who seek the protection of our legal system must be willing to comply with its rules and decisions.  Thomas forfeited the protection of the legal system when she escaped justice for more than three months.  Thomas's actions caused a capias warrant to be issued and required law enforcement officers to expend resources to track her down, arrest her, and hold her in custody for sentencing.  We would act well within our discretion to dismiss Thomas's appeal.

466 S.W.3d at 47 (citations omitted).

As in ***Carter*** and ***Thomas***, however, we eschew the escape rule because Lowe's complaint on appeal plainly lacks merit.  ***Carter***, 523 S.W.3d at 598; ***Thomas***, 466 S.W.3d at 47.

Lowe alleges an insufficiency of evidence that he took gas "without consent" intending to withhold it from the owner permanently or use it so as to make recovery by the owner unlikely.[2]  Yet his arguments largely ignore our

---

[2] *See* RSMo §§ 570.030.1, 570.010(8) as amended through 2014.  Quoting Lowe's sole point in pertinent part, the trial evidence:

> could not permit an inference of [Lowe's] purpose to withhold any property from White Oak Station permanently and where [Lowe] relinquished his driver's license before driving away, there was insufficient evidence of [Lowe's] intent to deprive White Oak Station of gasoline without the station's consent; and, where [Lowe] and White Oak Station had an agreement wherein [Lowe] enjoyed at least a possessory interest in the gasoline at all relevant times, there was insufficient evidence that [Lowe] had appropriated the property "of another" and no rational juror could reasonably find him guilty of larceny.

standard of review by citing evidence or inferences that we must ignore in determining sufficiency of the evidence. *See Thomas*, 466 S.W.3d 44 at 46 (we deem true all evidence and inferences favoring the state and reject all others).

Indeed, Lowe's brief concedes that "the jury could have found [Lowe] appropriated gas 'without the consent of White Oak Station'" on his initial drive-away and that "placing gas in the tank of his van and consuming it while driving away would seem to use the gas contrary to White Oak Station's recovery. *See* 570.010(8)(c)." Lowe then states that he offered a paper copy of his expired, temporary driver's license to the store clerk, and suggests that the clerk accepted that as satisfactory collateral and gave tacit "consent" to Lowe driving away.

Even if we could credit this "license/collateral/consent" theory under our standard of review, which we cannot, we find no evidence for it in the record. Lowe did not testify or call any witnesses. The only other party to this alleged transaction was the store clerk who, in pertinent part, testified as follows:

> Q. Do you recall what that amount [of gas pumped] was?
>
> A. $43 and some change, I believe. I think 41 or 43 dollars.
>
> Q. All right. And did Mr. Lowe come in at this point?
>
> A. He did.
>
> Q. All right. What happened when Mr. Lowe came in the store?
>
> A. He come up to the register and he said the pump went over, I was only going to pump $5 and I looked and it was $43 and I said no, you need to pay for this.
>
> Q. Okay. And what did Mr. Lowe do after you told him you need to pay for that.
>
> A. He told me, "I don't have the money, man." That is exactly what he said.
>
> Q. And what did you do next?
>
> A. I said well, you need to pay for this somehow. He says I don't have the money. I says well, you have to pay for this. And that's - -
>
> Q. Did he hand you had an expired driver's license?
>
> A. It was expired and it was a paper driver's license.

Q. Okay. And did he offer any money toward the bill?

A. He told me he could not pay it and I said well I'm going to have to call the manager, and he said, "Well, I don't have the money right now, man." And so at this point I got on the phone to call the manager.

Q. And who is your manager?

A. Her name is Laura James.

Q. And what was the purpose of calling your manager, Ms. James?

A. To ask her what I needed to do about the situation because it was quite a bit of money.

Q. All right. And when you got on the phone with Ms. James, what did Mr. Lowe do at that time?

A. He walked out of the store and turned around and walked out of the store and proceeded to go to his van and drive off.

Q. How would you describe the drive off? Was it fast, was it slow? Just a normal drive off?

A. He didn't run. He just casually walked out to the van and I was on the phone and I was looking and watching and I said, "He just drove off."

Q. All right. And at that time did you call the police?

A. I asked Laura what she wanted to do about the situation. And told her what the driver's license said and she said yes.

Q. So did you call the police at the direction of your manager?

A. I did.

The record, as we must view it, supports the stealing conviction.[3] Point denied. Judgment affirmed.

DANIEL E. SCOTT, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS

---

[3] That the victim considered Lowe's subsequent payment offers to avoid prosecution, or that Lowe later paid $20 and promised the rest (but never paid it), does not negate the evidence of Lowe's initial criminal intent or its sufficiency to support the conviction. *See* ***State v. Hunt***, 780 S.W.2d 159, 161 & n.2 (Mo.App. 1989).